IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| INTERNATIONAL FEDERATION OF<br>PROFESSIONAL & TECHNICAL<br>ENGINEERS<br>501 3rd Street, NW, Suite 701<br>Washington, D.C. 20001<br><br>TIMOTHY PERSONS<br>441 G Street, NW, Room 6105<br>Washington, D.C. 20548<br><br>NANCY KINGSBURY<br>441 G Street, NW, Room 6133<br>Washington, D.C. 20548<br><br>DENNIS ROTH<br>265 Lewis Washington Drive<br>Charles Town, WV 25414<br><br>NINA SERAFINO<br>101 Independence Avenue, SE, LM-315<br>Washington, D.C. 20540<br><br>v.<br><br>NANCY ERICKSON<br>Secretary, United States Senate<br>United States Capitol, Room S-312<br>Washington, D.C. 20510<br><br>KAREN L. HAAS<br>Clerk, United States House of Representatives<br>United States Capitol, Room H154<br>Washington, D.C. 20515<br><br>TERRANCE W. GAINER<br>Sergeant at Arms, United States Senate<br>United States Capitol, Room S-151<br>Washington, D.C. 20510 | Civil Action No. _____ |

## COMPLAINT FOR DECLARATORY AND INJUNCTIVE RELIEF

1.  This action is brought to prevent the most sensitive and private financial information of non-elected employees of the Legislative Branch of the United States government from being posted on the Internet for anyone in the world to see with the click of a mouse. This publication will not be made by some hacker or leaker but by officials of the U.S. Congress.

2.  By April 15, 2013, the Secretary of the Senate, the Sergeant at Arms of the Senate, and the Clerk of the House of Representatives must ensure that detailed financial data regarding the assets and financial transactions of these non-elected Legislative Branch employees and their spouses and dependent children will be posted on the Internet. No login will be required, no request will have to be made, and no record will be kept of those persons who view and possibly use the information for any purpose, no matter how criminal or misguided. Absent injunctive relief from this Court, these non-elected Legislative Branch employees and their families will become easy targets for identity theft, financial fraud, and even kidnapping when the nature, extent, and location of their financial assets become freely available worldwide.

3.  This startling publication of private information is mandated by the Stop Trading on Congressional Knowledge ("STOCK") Act, Pub. L. No. 112-105, 126 Stat. 291, signed into law on April 4, 2012. That Act was proposed in response to news stories and allegations that Members of Congress were exempt from insider trading laws and had the ability to profit from the misuse of non-public information.

4.  This action seeks to prevent the irreparable harm that Plaintiffs would otherwise suffer as a result of the unwarranted and unconstitutional dissemination of their private financial information on the Internet.

## JURISDICTION AND VENUE

5. This court has jurisdiction under 28 U.S.C. § 1331 (federal question). Venue is proper in this District under 28 U.S.C. § 1391(b), as the Defendants reside in the District of Columbia, and a substantial part of the events that are sought to be enjoined will take place in the District of Columbia.

## THE PARTIES

6. Plaintiffs are individual employees of the Legislative Branch in positions that obligate them to make Financial Disclosure reports under the Ethics in Government Act, 5 U.S.C. App'x §§ 101 *et seq.* ("EGA"), and the STOCK Act. The Plaintiffs face potential irreparable harm if Internet publication goes forward. An organization whose membership includes such employees is also a Plaintiff. The Plaintiffs are the following:

- The International Federation of Professional and Technical Engineers, AFL-CIO & CLC ("IFPTE"), an international union representing more than 90,000 engineers, scientists, state and federal government employees, and other workers in various professional, technical, and administrative professions. IFPTE is comprised of local union affiliates that directly represent employees in their dealings with their respective employers; these employers include the Government Accountability Office (GAO) and the Congressional Research Service (CRS). IFPTE represents approximately 120 Financial Disclosure Form filers employed by these two legislative branch agencies. IFPTE's mission and purpose includes protecting the rights of its members, including their right to informational privacy.

- Timothy Persons ("Persons"), Chief Scientist at the U.S. Government Accountability Office ("GAO") in Washington, D.C. Mr. Persons' current position is classified at the

SES-level and he has been responsible for filing Senate Public Financial Disclosure Reports since 2008.

- Nancy Kingsbury ("Kingsbury"), Managing Director of Applied Research and Methods at the GAO in Washington, D.C. Ms. Kingsbury's current position is classified at the SES-level and she has been responsible for filing Senate Public Financial Disclosure Reports since 1985.

- Dennis Roth ("Roth"), former Specialist in Labor Economics at the Congressional Research Service ("CRS") in Washington, D.C. Mr. Roth's most recent position was at the GS-15, Step 10 level; he has filed a House Financial Disclosure Statement Form A for approximately the past 10 to 15 years.

- Nina Serafino ("Serafino"), a Specialist in International Security Affairs at CRS in Washington, D.C. Ms. Serafino's current position is at the GS-15, Step 10 level; she has filed a House Financial Disclosure Statement Form A for more than 10 years.

7. Defendants are the Secretary of the Senate, the Sergeant at Arms of the Senate, and the Clerk of the House of Representatives. The individual Defendants are sued in their official capacities only.

## FACTS

### I. Pre-STOCK Act Reporting and Protections of Financial Information of Legislative Branch Employees

8. For more than three decades, Members of Congress and certain officers and employees of Congress have been required to file annual Financial Disclosure reports with legislative ethics offices pursuant to the Ethics in Government Act ("EGA").

9. The EGA imposes financial reporting obligations for Legislative Branch employees with pay above the GS-15 level or 120 percent of the minimum rate of basic pay payable for GS-15 level for positions not under the General Schedule.

10. These Legislative Branch employees file Financial Disclosure reports with the Secretary of the Senate and Clerk of the House of Representatives. The most recent versions of the annual disclosure forms are United States Senate Financial Disclosure Report for Annual and Termination Reports (http://www.ethics.senate.gov/public/index.cfm/files/serve?File_id=95ebdeef-617d-415b-a91b-559c732f63a8), and United States House of Representatives EGA Financial Disclosure Statement Form A (http://ethics.house.gov/sites/ethics.house.gov/files/73-496_FormA.pdf).

11. The EGA requires the disclosure of nearly all of an employee's assets, income, financial transactions, liabilities, and other personal information. This disclosure requirement is not limited to the employees themselves, but in most cases also includes their spouses and dependent children.

12. More specifically, Financial Disclosure reports must include the following, subject to certain threshold amounts and exceptions:

    a. Certain biographical information, such as name, address, and telephone number;

    b. Assets including real and personal property, bank accounts, brokerage accounts, IRAs, 401(k) plans, other non-federal retirement accounts, 529 college savings plans, stocks, bonds, mutual funds, insurance policies, and trusts, and transactions involving the purchase, sale, or exchange of such assets;

403928935v2

    c. Income from dividends, interest, capital gains, rents, and royalties;

    d. Income from pension and retirement payments, IRA and 401(k) distributions, benefit payments from state or local governments (such as unemployment compensation), and other earned income from outside employment; and

    e. Debts and liabilities including personal loans, student loans, and mortgages on rental properties.

13. Employees required to file Financial Disclosure reports do so with the Secretary of the Senate or the Clerk of the House.

14. Although Congress was required to make these Financial Disclosure reports available to the public prior to the STOCK Act, the EGA limited public access and provided several safeguards for access to an individual's information:

    a. A person who wished to view or obtain a report had to submit a written application, listing the requestor's name, occupation, and address; the name and address of any other person or organization on whose behalf the requestor was making the request; an affirmation that the requestor was aware of the prohibitions on obtaining or using the report; and an agreement by the requestor to abide by those prohibitions.

    b. The EGA required that an application requesting a Financial Disclosure report also be made available to the public throughout the period that the report is made available to the public.

    c. The EGA prohibited reports from being used for any unlawful purpose; for any commercial purpose, other than by news and communications media for dissemination to the general public; for determining or establishing the credit

rating of any individual; or for use in soliciting money for any political, charitable, or other purpose.

d. The Attorney General was authorized to bring a civil enforcement action against any person who used an individual's report for a prohibited purpose.

## II. The STOCK Act

15. The STOCK Act was introduced in response to news stories and allegations that Members of Congress were using "insider information" to make money and investments, but, as Members of Congress, they purportedly could not be held liable for insider trading.

16. As passed by Congress and signed by the President, and as subsequently amended,[1] Section 8 of the STOCK Act amended the EGA to require: (1) additional reporting requirements for securities and real property; (2) Internet publication of unredacted employee Financial Disclosure reports by April 15, 2013; and (3) Internet publication within 18 months of fully searchable and sortable databases containing the Financial Disclosure reports.

17. Concerning Internet publication, Section 8(a)(1) of the STOCK Act, as amended, requires online posting of Financial Disclosure reports submitted by covered employees:

> Not later than [April 15, 2013], or 90 days after the date of enactment of this Act, whichever is later, the Secretary of the Senate and the Sergeant at Arms of the Senate, and the Clerk of the House of Representatives, shall ensure that financial disclosure forms filed by Members of Congress, candidates for Congress, and employees of Congress in calendar year 2012 and in subsequent years pursuant to title I of the Ethics in Government Act of 1978 are made available to the public on the respective official websites of the Senate and the House of Representatives not later than 30 days after such forms are filed.

18. Under the STOCK Act as amended, April 15, 2013, is the applicable statutory deadline for Internet publication. Pursuant to the Act, all Financial Disclosure reports filed with

---

[1] See Pub. L. No. 112-173, 126 Stat. 1310 (2012) (extending Internet publication deadline to September 30, 2012); Pub. L. No. 112-178, 126 Stat. 1408 (2012) (further extending deadline to December 8, 2012); Pub. L. No. 112-207, 126 Stat. 1495 (2012) (further extending deadline to April 15, 2013).

the Secretary of the Senate and the Clerk of the House in 2012 and between January 1, 2013, and March 15, 2013, must be published on the Internet by that date. Virtually all non-elected Legislative Branch employees who are covered by the STOCK Act will have filed disclosure forms within those dates. Forms filed subsequent to March 15, 2013, must be published on the Internet within 30 days of filing.

19. The STOCK Act also directs the Secretary of the Senate, the Sergeant at Arms of the Senate, and the Clerk of the House to create, within 18 months of the enactment of the STOCK Act, databases containing the Financial Disclosure reports of all covered Legislative Branch employees, which will be maintained on the official websites of the Senate and the House of Representatives, and which will allow the public to search, sort, and download the data contained in the reports.

20. The STOCK Act repeals the prior EGA requirements for public access to employee financial disclosure information. No longer is a person who wishes to obtain access required to submit an application containing his or her name, address and occupation, and the name and address of any other person or organization on whose behalf the applicant is seeking access. The applicant also no longer has to affirm, with a signature, that he or she is aware of the prohibitions on obtaining or using information from the financial disclosure reports, and agree to abide by the prohibitions.

21. No login or identification will be required to obtain Internet access to the Internet postings to be made by April 15, 2013. No login or identification will be required to view, search, and sort the data contained in the reports to be posted on the Senate and House websites. A login may be required for downloading data from the Senate and House websites, but it is child's play to create an Internet login that reveals nothing about one's identity.

22. The Internet publication by April 15, 2013, will include Financial Disclosure reports that were filed before the passage of the STOCK Act by filers that relied on EGA's limited public access procedures and safeguards.

## Irreparable Injury

23. Publication of the Financial Disclosure reports of non-elected Legislative Branch employees will cause them an immediate and irretrievable loss of their most private and confidential financial information. Details of their financial affairs, and the financial affairs of their spouses and dependent children, will be available to literally anyone in the world who has access to the Internet. No record will be made of who views the information. No restrictions will be placed on how the information will be used or distributed. Simply because they are employed by the Legislative Branch, those filers will suffer the permanent loss of their confidential financial information.

24. The irreparable harm that the Plaintiffs (and the members of Plaintiff IFPTE) will suffer include:

- The permanent and irretrievable loss of their and their spouses' financial privacy;
- The likelihood of identity theft and phishing;
- The risk of kidnapping of themselves or family members while traveling internationally;
- The risk that information regarding non-traditional forms of investment may lead to theft;
- The risk of retribution by current or former employees;

- Impairment of their agency's ability to attract and retain highly qualified employees in the future, due to the intense public scrutiny of personal financial information invited by the STOCK Act's Internet publication requirement;
- Disadvantaging themselves and their spouses in business negotiations; and
- Plaintiffs Persons and Serafino, who work in the national security field and who have access to classified and other sensitive national security information, may also be targeted by foreign intelligence services. These services may use such information in an attempt to blackmail Plaintiffs and others similarly situated; to learn details of their financial affairs in near real time, which may indicate exploitable vulnerabilities; or to create a more complete dossier of Plaintiffs and others, in order to help build personal relationships that they may develop into sources of valuable information.

### First Cause of Action
### United States Constitution, Right to Privacy

25.   Defendants' acts and omissions described herein implementing Section 8 of the STOCK Act will violate Plaintiffs' constitutional right to privacy in their personal financial information by distributing that information indiscriminately across the Internet.

26.   Unless Defendants' unconstitutional acts are enjoined by the order of this Court, Defendants will cause irreparable injury to Plaintiffs, and Plaintiffs have no adequate remedy at law.

### Second Cause of Action
### Fifth Amendment of the United States Constitution
### (Plaintiffs Filing Prior to the STOCK Act)

27.   Application of Section 8 of the STOCK Act retroactively to Plaintiffs who filed a Financial Disclosure Form in 2012 but prior to passage of the STOCK Act would be an unlawful

application of the STOCK Act, without valid justification, constituting a deprivation of liberty or property without due process of law, in violation of the Fifth Amendment of the United States Constitution.

28.  Unless Defendants' unlawful practices implementing Section 8 of the STOCK Act are enjoined by the order of this Court, Defendants will cause irreparable injury to Plaintiffs, and Plaintiffs have no adequate remedy at law.

### Third Cause of Action
### Declaratory Relief

29.  Pursuant to 28 U.S.C. § 2201, an actual controversy exists between Plaintiffs and Defendants with respect to whether Plaintiffs' personal financial data can lawfully be posted on the Internet, and Plaintiffs are entitled to a declaratory judgment that Section 8 of the STOCK Act, as applied to Plaintiffs and other non-elected Legislative Branch employees, is unconstitutional.

WHEREFORE Plaintiffs respectfully request that the Court:

A.  Declare Section 8 of the STOCK Act, as applied to Plaintiffs and other non-elected Legislative Branch employees, unconstitutional;

B.  Declare that Defendants' actions are contrary to Plaintiffs' constitutional rights, powers, privileges, or immunities;

C.  Enjoin all Defendants, preliminarily and permanently, from implementing Section 8 of the STOCK Act to make Financial Disclosure reports of non-elected Legislative Branch employees or the information contained in them available on the Senate and House official websites, or otherwise available on the Internet;

D.  Enjoin all Defendants, preliminarily and permanently, from requiring non-elected Legislative Branch employees to submit financial disclosure information so long as such

information is subject to Internet publication on the official websites of the Senate and the House of Representatives;

    E.    Award Plaintiffs their attorneys' fees and costs incurred in this action;

    F.    Grant such further relief as may be just.

Dated: April 8, 2013

Respectfully submitted,

_____
Jack McKay (D.C. Bar No. 159335)
Thomas G. Allen (D.C. Bar No. 484425)
Daron T. Carreiro (D.C. Bar No. 983088)
Kristen E. Baker (D.C. Bar No. 995333)
Vernon Thompson (D.C. Bar No. 999336)
PILLSBURY WINTHROP SHAW PITTMAN LLP
2300 N Street, NW
Washington, D.C. 20037
Office: (202) 663-8000
Fax: (202) 663-8007
Email: jack.mckay@pillsburylaw.com
       thomas.allen@pillsburylaw.com
       daron.carreiro@pillsburylaw.com
       kristen.baker@pillsburylaw.com
       vernon.thompson@pillsburylaw.com

Arthur B. Spitzer (D.C. Bar No. 235960)
American Civil Liberties Union
of the Nation's Capital
4301 Connecticut Avenue, NW, Suite 434
Washington, D.C. 20008
Office: (202) 457-0800
Fax: (202) 457-0805
Email: artspitzer@aclu-nca.org

*Counsel for Plaintiffs*

403928935v2